UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| FRED MELNYK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TOWN OF LITTLE COMPTON, by ) <br> and through its Treasurer in her ) <br> official capacity only, Mary-Jane ) <br> Harrington, RICHARD PETRIN, ) <br> individually and ROBERT MUSHEN, ) <br> individually, ) <br> ) <br> Defendants. ) | C.A. No. 1:19-CV-00180-MSM-LDA |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The plaintiff, Fred Melnyk, a former firefighter for the Town of Little Compton, brought this action in the wake of his termination in 2019, alleging that the defendants, Town of Little Compton ("the Town"), its Fire Chief Richard Petrin, and its Town Council President Robert Mushen, breached the collective bargaining agreement between his union and the Town and its implied covenant of good faith and fair dealing; retaliated against him in violation of the Rhode Island Whistleblowers' Protection Act; and violated his First Amendment right to free speech. The defendants move for summary judgment on the entirety of the Mr. Melnyk's Complaint.

For the following reasons, the Court GRANTS the defendants' Motion (ECF No. 19).

1

## I.   BACKGROUND

Mr. Melnyk was a firefighter with the Town of Little Compton from October 2, 1996, until his termination on March 6, 2019.  He highlights a series of episodes leading up to his termination that, he argues, support his conclusions that the defendants breached the collective bargaining agreement ("CBA") and violated his statutory and constitutional rights.  These episodes are described in relevant part as follows, based upon the evidence presented.

On August 21, 2017, Chief Petrin sent Mr. Melnyk a letter of reprimand for his allowing a part-time firefighter to drive the rescue unsupervised to the hospital, which was a safety issue.  (ECF No. 26-4 at 1.)  The Chief wrote that he would recommend a two-day suspension to the Town Council.  *Id.*  Rather than a discussion of the issue at a Town Council meeting, however, members of the Council, the Chief, representatives from the International Association of Firefighters Local 3957 ("the Union"), and Mr. Melnyk met at the fire station instead to discuss a "possible compromise."  *Id.* at 3.  Mr. Melnyk testified that he stated in response to these allegations that his actions resulted in a safety concern, that a greater safety matter was that the fire department's trucks were fourteen months out of inspection.  (ECF No. 24-1 at 27.)  In the end, Mr. Melnyk received no discipline.  *Id.*

In the fall of 2017, the fire department had two open spots for promotion to lieutenant.  Mr. Melnyk and two others were finalists, but the Town promoted the other two and not Mr. Melnyk.  On November 2, 2017, Mr. Melnyk filed a grievance with Chief Petrin, asserting that it was improper that not only did he and the others

appear for an interview before a three-member panel as required under the CBA, but also an interview before the Town Council, which was beyond the scope of the CBA. (ECF No. 24-6.) As a remedy, Mr. Melnyk requested that "the Town recognize it is in breach of contract and award a position of Lieutenant to Firefighter Melnyk." *Id.*

Then, on November 21, 2017, Mr. Melnyk filed a grievance also relating to the promotional process, asserting that the three-member interview panel was improperly selected. (ECF No. 24-2.) Under the CBA, the Union was to select a panel member and the Little Compton Fire Chief another, and then those two would select a third. *Id.* Instead, the Union-selected panel member was not involved in choosing a third, resulting in Chief Petrin selecting two members. *Id.* at 2. Mr. Melnyk sought, among other requests, that the "corrupt interviewing process be null and voided." *Id.* at 3. Chief Petrin decided that the oral interview phase of the promotion process would be reconducted. (ECF No. 24-3.)

After the reconducted interviews, at a Town Council meeting on February 9, 2018, Mr. Melnyk voiced his concern that the current lieutenant's positions should be vacated prior to the impending vote on the promotions, given the problems with the original interviews. (ECF No. 24-7 at 7.) Nevertheless, the Town Council proceed to vote and promoted the other two firefighters, again leaving Mr. Melnyk without the promotion. *Id.* at 8.

On March 26, 2018, while working at the fire station, the Mr. Melnyk was involved in a confrontation and physical altercation with another firefighter, the facts of which were disputed by both parties. (ECF Nos. 24-12; 27-3.) Mr. Melnyk

3

contacted the police and pressed criminal charges, though the Town Solicitor ultimately dismissed these charges, given the other firefighter's claim of self-defense. (ECF No. 27-2.)

At work on March 30, 2018, Mr. Melnyk was confronted by two fellow firefighters because he had pressed charges for the March 26 incident. (ECF No. 24-1 at 9.) Shortly thereafter he experienced chest pains, prompting him to use one of the rescue wagon's cardiac monitors. *Id.* at 10. The other firefighters transported him to a nearby hospital. *Id.*

After Mr. Melnyk's discharge from the hospital, his physician Dr. Aju Daniel, in letters dated April 5 and April 12, 2018, advised that Mr. Melnyk was unable to return to work. (ECF No. 29 at 3-4.)

The CBA, at Article VII, Section 6.0, provides that

> Upon review of the report, if the injury or illness can be proven to have been suffered in the line of duty, the employee will be immediately placed in an "Injured on Duty" status. If not, the employee will be placed in 'leave with pay, pending injury determination status until the cause is resolved by referral to the employee's and the town's physicians and, if necessary, a third physician agreeable to both town and union.

(ECF No. 24-13 at 14.)

On April 13, Chief Petrin informed Mr. Melnyk that he had been placed on administrative leave. (ECF No. 26-5.) On April 16, Mr. Melnyk filed a grievance seeking injured on duty ("IOD") benefits. (ECF No. 26-5.) On April 23, Council President Mushen wrote to Mr. Melnyk notifying him that after a review of the incident report, he had directed that Mr. Melnyk be put on administrative leave until the cause of his illness was resolved. (ECF No. 28-1.) One day later, Mr. Melnyk's

4

physician provided a letter opining that his condition was "from job related stress." (ECF No. 24-8.)

The Union represented the plaintiff in connection with his IOD grievance and demanded arbitration. On July 20, 2018, however, the Town and the Union entered into a Memorandum of Agreement ("MOA") that set forth how the dispute was to be resolved in lieu of arbitration. (ECF No. 19-3.) The Town would obtain a review of Mr. Melnyk's medical records from a specialist of its choice and Mr. Melnyk would seek an opinion from his physician. *Id.* If the two physicians were not in agreement as to the origin of Mr. Melnyk's condition, then the two would select a neutral third physician to provide an opinion. *Id.* This third opinion would be binding and remove the need for arbitration. *Id.* The fact that the two doctors chose the neutral third was an agreed upon departure from the default procedure established in the CBA. (ECF No. 24-13 at 14.) The CBA provides that the Town and the Union shall mutually agree on a neutral third physician. *Id.*

The Town selected John Cava, M.D., who examined Mr. Melnyk on August 1, 2018. (ECF No. 19-5.) Dr. Cava's progress notes of the meeting do not set forth an explicit opinion on whether the illness was job related. *Id.* Mr. Melnyk testified that Dr. Cava expressed to him in the exam that he would not offer an opinion as to whether his condition was job related. (ECF No. 24-1 at 19.) However, Dr. Cava's records also include the following exchange of internal notes on August 22:

> Bethany Medeiros:
>> Patient was seen in the office 8/1 for a second opinion. The Town of Little Compton Fire Department is inquiring if Dr. Cava is able to determine from his examination whether this patient's injury or illness

>   is job related.  They are looking for something in writing and will have the patient come in again if necessary.
>
> John Cava, M.D.
>   No my opinion is that it is not job-related.  Just send them a copy of my note.

(ECF No. 19-5.)

On August 24, 2018, Robert Neill, Jr., a staff representative of the Union and the local union president, James Vandal, conferred by email and agreed that the two physicians should mutually select a neutral.  (ECF No. 26-1.)  Mr. Vandal then advised Mr. Melnyk that the Town's doctor would reach out to his to make the neutral selection.  *Id.*

On October 2, President Mushen wrote to Mr. Vandal advising him that Dr. Cava "has declined to nominate a third physician" to evaluate the plaintiff.  (ECF No. 26-2 at 2.)  He then suggested that the Town and the Union follow the CBA and themselves agree on an impartial third physician.  *Id.*  He proposed Dr. Edward Keating, a cardiologist he found on the Rhode Island state courts' website listing of impartial physicians.  *Id.*

On October 2, 2018, Mr. Vandal responded that he would confer with Mr. Neill but agreed that the Town and the Union should "make the choice."  *Id.* at 3.  Three days later, Mr. Vandal advised that he and Mr. Neill were in agreement with the Town's proposal but suggested the drafting of an amendment to the MOA.  *Id.*  On October 18, the Town and the Union executed an amendment to the MOA, which provided that because "both physicians are not willing to attest to the acceptability of a third physician" the parties would instead follow the procedure in the CBA, to

6

select "a third physician agreeable to both the town and union." (ECF No. 19-6.) The Town and the Union also confirmed their mutual agreement of Dr. Keating. *Id.*

On October 19, 2018, President Mushen confirmed to Mr. Vandal that Dr. Keating was willing to serve as the impartial physician and that the Town and the Union would send to Dr. Keating their respective doctors' records. (ECF No. 26-2 at 6.) Mr. Vandal then advised Mr. Melnyk that Dr. Keating "was chosen following the guidelines in the CBA" and that his own doctor should provide Dr. Keating with Mr. Melnyk's records. *Id.* at 7.

Dr. Keating issued a report on January 7, 2019, offering the opinion that Mr. Melnyk's primary conditions were not job related. (ECF No. 19-7 at 3.) President Mushen provided Mr. Vandal with Dr. Keating's report on January 23, 2019. (ECF No. 26-3 at 2.)

On January 31, 2019, President Mushen wrote to Mr. Melnyk advising him that Dr. Keating assessed his primary illness as not job related. (ECF No. 19-8.) In accordance with the CBA, the Town would therefore assess sick leave for the hours missed.[1] *Id.*

After the Union received a copy of the Town's letter to Mr. Melnyk on January 31, 2019, notifying him of Dr. Keating's finding, Mr. Vandal wrote to Mr. Neill stating that the letter "closes the grievance process per the CBA, as the Town and Union have followed the articles pertained in the grievance and the MOA to their end to the

---

[1] Section 6.0 of Article VII of the CBA provides that "If the injury or illness is determined to have not been job-related, the employee will be assessed sick leave for hours missed." (ECF No. 24-13 at 14.)

7

best of our ability." (ECF No. 26-3 at 3.) He added: "I do believe we will be able to close the arbitration as the contract and MOA have been followed to [their] end." (ECF No. 26-3 at 3.)

Mr. Melnyk had no remaining leave time available to him and, on February 20, 2019, President Mushen was informed his bi-weekly pay would stop. (ECF Nos. 24-1 at 20; 24-11.) In March 2019, he was unable to return to his duties as a firefighter and ultimately was terminated. *Id.*

## II. SUMMARY JUDGMENT STANDARD

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug. Inc.,* 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000).

## III. DISCUSSION

### A. Breach of Contract and of the Obligation of Good Faith and Fair Dealing

Mr. Melnyk alleges that the defendants breached the MOA, of which he is a

third-party beneficiary, in two ways. First, he claims that the Town failed to obtain a proper opinion from its selected physician, Dr. Cava. He argues that a review of Dr. Cava's records indicates that he thought Mr. Melnyk was there for a second opinion on his labile hypertension and, Mr. Melnyk testified, Dr. Cava told him during the examination that "he thought he was just giving him a physical and that he would not offer an opinion if [his] condition was job related." (ECF No. 25-1 at 11.) Nevertheless, when pressed by the Town for an opinion or whether he needed to see Mr. Melnyk again to provide one, Dr. Cava responded, "No my opinion is that it is not job-related." (ECF No. 19-5.)

Importantly, the Union officials who represented Mr. Melnyk in the matter took Dr. Cava's records as sufficient to trigger the need for a third physician. Specifically, Mr. Neill, the Union's staff representative, and the local president, Mr. Vandal, conferred by email on August 24, 2018, and agreed that the two doctors should mutually select a neutral, per the MOA.[2] (ECF No. 26-1.)

Mr. Melnyk's assertion that the Town never obtained a proper opinion from Dr. Cava is belied by the record. Dr. Cava stated his opinion in a follow up message that Mr. Melnyk's condition was not work related, which was accepted by both the Town and the Union as sufficient to require a neutral, third opinion. There simply is no *genuine* issue of material fact for a breach of the MOA on this point.

Mr. Melnyk's second argument for a breach is that the Town failed to reach out

---

[2] The MOA required that if the two doctors were not in agreement about the origin of Mr. Melnyk's condition, then the two would select a neutral third physician to provide an opinion. (ECF No. 19-3.)

9

to Dr. Cava to facilitate the selection of a third physician and, as a result, no one reached out to Mr. Melnyk's doctor, Dr. Daniel, to participate in the selection of the third. But again, the documentary evidence makes clear this is not so. President Mushen, on October 2, 2018, wrote to the Union Local President, Mr. Vandal, informing him that "[o]ur town-selected physician (cardiologist) Dr. Cava, has declined to nominate a third physician to evaluate FF Melnyk. I don't know what response the union may have gotten from Dr. Daniel." (ECF No. 26-2.) The Union agreed that the MOA should be amended to allow for the Town and the Union to select a neutral third physician. Indeed, as written into the amendment, the parties agreed that an amendment was necessary because "both physicians are not willing to attest to the acceptability of a third physician." (ECF No 19-6.)

The evidence therefore demonstrates that the parties agreed that a contractual condition—the consensus of both doctors on the selection of a third—became impossible. Thus, by mutual agreement, they superseded that requirement with another—that the Town and the Union instead agree on a neutral third physician. They then did so. The plaintiff therefore cannot sustain a claim for breach of contract on this point either.

As such, the defendant's Motion for Summary Judgment on the plaintiff's claim for breach of contract (Count I) is granted.

Because the Court finds that Mr. Melnyk cannot, as a matter of law, support a claim for breach of contract, his secondary claim that the defendants breached the obligation of good faith and fair dealing implied in the contract must also fail. *See*

*McNulty v. Chip*, 116 A.3d 173, 185 (R.I. 2015) ("[A] claim for breach of the implied covenant of good faith and fair dealing does not create an independent cause of action separate and apart from a claim for breach of contract."). The defendants' Motion is granted as to Count II.

### B. The Rhode Island Whistleblowers' Protection Act, R.I.G.L. § 28-50-1 *et seq.*

Mr. Melnyk alleges that his termination in March 2019 was a retaliatory action in violation of the Rhode Island Whistleblowers' Protection Act ("RIWPA"), R.I.G.L. § 28-50-1 *et seq.* He points to two statements that he claims were reports of illegal activity that should qualify him for protection under RIWPA:

1. His August 2017 statement that the fire department's vehicles were out of inspection; and

2. His March 2018 filing of a complaint with the Little Compton police regarding the alleged assault against him by another firefighter.

To make out a *prima facie* case under the RIWPA, a plaintiff must demonstrate the following: (1) that he engaged in protected whistleblowing conduct as defined by the RIWPA; (2) that he suffered an adverse employment action at the time or thereafter; and (3) that the adverse action was causally related to the protected conduct. *Casey v. Manni*, 449 F. Supp. 3d 1, 3 (D.R.I. 2020) (citing *Chagnon v. Lifespan Corp.*, C.A. No. 15-493S, 2017 WL 3278952, at *6 (D.R.I. June 19, 2017) (adopted 2017 WL 3278858 (D.R.I. Aug. 1, 2017)).

If a plaintiff has set forth a *prima facie* case, the matter is then analyzed under the three-step, burden shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Chagnon*, 2017 WL 3278952, at *7; *Barboza v. Town of*

*Tiverton*, C.A. No. 07-339, 2010 WL 2231995, at *7 (D.R.I. June 2, 2010). Under this framework, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. *Chagnon*, 2017 WL 3278952, *7. If the defendant does so, the plaintiff must then demonstrate that the defendant's reason is a pretext for retaliatory discrimination. At the summary judgment stage, a plaintiff must "point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory." *Barboza*, 2010 WL 2231995, at *7 (quoting *King v. Town of Hanover*, 116 F.3d 965, 968 (1st Cir. 1997)).

Even assuming for the moment Mr. Melnyk makes a *prima facie* case under RIWPA, he has not offered evidence to properly rebut the defendants' non-discriminatory reason for his termination: that by March 2019 he was out of any leave time but could not report for duty.

The plaintiff offers a series of events that he argues demonstrates that the defendants did "everything in their power" to deny him IOD benefits and to punish him for making his reports. But each of these, collectively or individually, fall flat when compared to the evidence. He first asserts that he was placed on administrative leave despite Dr. Daniel's letter that his condition was job related. But this letter was not written until April 24, 2018, *after* Mr. Melnyk was placed on administrative leave on April 23rd. Dr. Daniel's letters up to that time stated only that Mr. Melnyk was unable to return to work.

Mr. Melnyk also argues that, after March 30, when he was on leave, he was not allowed into the station unescorted as a means of retaliation. But his testimony

reveals that this was a precaution related to the fact that the other firefighter involved in the alleged assault was on duty and a no-contact order existed between them or, that on later occasions during his grievance process, he had to wait at the dispatch area when he arrived for meetings with his attorney and the Town's attorney. (ECF No. 24-1 at 28-29.)

He then raises the assertions discussed and debunked in his breach of contract claim, that the Town did not follow the MOA with respect to Dr. Cava's opinion and the selection of a neutral third physician. He adds, however, that President Mushen unilaterally selected the third physician, Dr. Keating, but again, the evidence—namely, the email correspondence between the Town and the Union and the amendment to the MOA—demonstrate that this choice was a mutual agreement and that the Town and the Union representing Mr. Melnyk followed the procedures of the CBA and the MOA. (ECF Nos. 19-6; 26-2.)

Mr. Melnyk also argues that Chief Petrin testified that he had only fired one other firefighter and that because that employee had given two weeks' notice to go to another department. But Mr. Melnyk fails to present any evidence that others without leave time kept their employment status while out on unpaid leave.

Finally, he argues that the CBA did not require his termination. Indeed, the CBA is silent on how to proceed with an employee who has no further leave time but cannot report to duty. But that decision to terminate him because he could not report to duty while having no remining leave, is a non-retaliatory reason. To show pretext, a plaintiff "must do more than cast doubt on the rationale proffered by the employer[;]

13

'the evidence must be of such strength and quality as to permit a reasonable finding that the ... [termination] was obviously or manifestly unsupported.' " *Ruiz v. Posadas de San Juan Assocs.*, 124 F.3d 243, 248-49 (1st Cir. 1997) (quoting *Brown v. Tr. of Boston Univ.*, 891 F.2d 337, 346 (1st Cir. 1989)).

In all, Mr. Melnyk has failed to raise a genuine issue of material fact that would demonstrate that the reason for his termination was pretextual or that there was any causal relationship between his purportedly protected activity and his termination. Instead, the sequence of events regarding his IOD claim demonstrate that the Town and the Union followed an agreed upon dispute resolution process.

As such, the defendants' Motion on Count III is granted.

## C. Retaliation for the Exercise of First Amendment Rights

In his final claim, brought pursuant to 42 U.S.C. § 1983, Mr. Melnyk asserts that Chief Petrin and President Mushen retaliated against him for exercising his First Amendment right to free speech. When determining whether an adverse employment action violates a public employee's free speech rights under the First Amendment, the First Circuit employs a three-part test: (1) the employee must speak "as a citizen on a matter of public concern"; (2) the court must "balance ... the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees"; and (3) "the employee must show that the protected expression was a substantial or motivating factor in the adverse employment decision." *Decotiis v. Whittemore*, 635 F.3d 22, 29-30 (1st Cir. 2011);

14

*Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 765 (1st Cir. 2010) (citations omitted).

Speech involves matters of public concern "when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Lane v. Franks*, 573 U.S. 228, 241 (2014) (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)). The inquiry turns on the "content, form, and context" of the speech. *Id.* "That determination may require an inquiry into the employee's motive for the speech." *Mullin v. Town of Fairhaven,* 284 F.3d 31, 38 (1st Cir. 2002). "In that endeavor, we examine the extent to which plaintiffs intended their speech to contribute to any 'public discourse,' or if it simply reflected personal or internal [workplace] concerns." *Id.*

"[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983). Indeed, when employee speech is not considered a matter of public concern, "government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* at 146. "Ordinarily, complaints regarding internal personnel matters within a

15

government agency are not deemed matters of public concern." *Bibiloni Del Valle v. P.R.*, 661 F. Supp. 2d 155, 180 (D.P.R. 2009).

Mr. Melnyk offers two statements in support of his claim of retaliation in violation of his right to free speech. First, his statements that the process of the promotions to lieutenant made in September and October 2017 were made improperly. Second, his report to the Little Compton Police that he was assaulted by another firefighter in March 2018.

The focus of either statement, however, was not of public concern but of Mr. Melnyk's personal interest. While his grievance regarding the lieutenant promotion process asserts a "corrupt interviewing process," the focus of it for Mr. Melnyk, a candidate for the position who was not selected, was "primarily directed to remedy a personal situation." *See Taylor v. Town of Freetown*, 479 F. Supp. 2d 227, 236 (D. Mass 2007) (holding that a letter to a Board of Selectmen, though it had claimed misconduct, was principally intended to remedy a personal situation, and therefore did not address a matter of public concern). In his November 2, 2017, grievance filing, Mr. Melnyk sought the remedy of being awarded the promotion. (ECF No. 24-6.) In the November 21 filing, he sought to have the original interviews deemed null and void, which they were, and second interviews were conducted. (ECF Nos. 24-2; 24-3.) This grievance reflected personal workplace concerns, which is speech not protected by the First Amendment. *See Mullin*, 284 F.3d at 38.

Further, Mr. Melnyk's report of the claimed assault regarded a personal dispute between him and another employee, not a matter of public concern. His

16

written statement of the incident is focused on his description of the other firefighter's combative, uncooperative attitude and the assault against him. (ECF No. 24-12.) His argument in this lawsuit that he made the statement as a matter of the public concern that the other firefighter's illegal behavior delayed a response to a rescue call is a concern not raised in his written account and is a *post hoc* attempt to make this personal situation a public matter. It therefore is not afforded First Amendment protection. *See Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 175 (D. Mass. 2013) (holding that a letter primarily concerned with an employee's personal situation could not be deemed an issue of public concern).

Because neither of Mr. Melnyk's statements primarily address matters of public concern, but instead relate to matters of his personal interest, they are not protected speech and his claim under § 1983 must fail. The defendants' Motion on Count IV therefore is granted.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment (ECF No 19) is GRANTED.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

March 29, 2022